UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ABDULLAH ENNIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 1:15-cv-01359-RLY-MPB |
| | ) |
| CNH INDUSTRIAL AMERICA, LLC, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Abdullah Ennin, is a former supervisory-level employee of Defendant, CNH Industrial America, LLC ("CNHi"). He was driving to work on a cold November day when his car suddenly broke down. Since he was only a few minutes away from the facility at that point, he called one of his hourly employees and asked for help. That worker left without clocking out and came to Ennin's aid. They purchased fuel for Ennin's vehicle and arrived at CNHi approximately 45 minutes later. When they entered the facility, Ennin did not make the hourly employee swipe his badge at the door.

CNHi ultimately terminated Ennin's employment because of this incident. It maintains that this decision was warranted because Ennin asked an employee to leave work in order to help him with a personal matter, and he violated building security rules, among other reasons. Ennin, on the other hand, alleges that he is the victim of unlawful discrimination. He advances what the court construes as nine claims: (1) racial discrimination, in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981; (2) national origin discrimination, in violation of

1

both Title VII and Section 1981; (3) disability discrimination, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (4) failure to accommodate, in violation of the ADA; (5) interference, in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; (6) retaliation, in violation of the FMLA; (7) conspiracy to deprive civil rights, in violation of 42 U.S.C. § 1985(3); (8) neglect to prevent a conspiracy to deprive civil rights, in violation of 42 U.S.C. § 1986; and (9) negligent supervision in violation of Indiana law.

CNHi now moves for summary judgment on all counts. Because a reasonable jury could not return a verdict for Ennin on any of his claims, CNHi's motion must be **GRANTED**.

**I. Evidentiary Objections**

Before reviewing the material facts of this case, the court considers the evidentiary objections CNHi lodged in its reply brief. These objections, which are essentially motions to strike, must be resolved first because they have a substantial impact on what materials the court is able to consider in making its findings of fact.

CNHi asks the court to strike Ennin's exhibits 4, 5, 6, 11, 12, 13, 14, 15, 16, 17, 19, 21, and 22. It argues that these exhibits are inadmissible for many reasons, including lack of authentication and hearsay. Because these objections were first advanced in a reply, Ennin could have filed a surreply and disputed CNHi's arguments. The court's Local Rules expressly authorize a litigant to file an additional brief under these circumstances. *See* S.D. Ind. L.R. 56-1(d). For whatever reason, Ennin opted not to respond. He has therefore waived any objection. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d

461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Having reviewed the record, the court now summarily grants CNHi's motions to strike. The court has not considered these stricken materials in resolving the request for summary judgment.

## II. Background

### A. Ennin's Employment with CNHi

CNHi is an import/export facility. (Filing No. 30-1, Declaration of Stacy Darlin ¶ 17). Ennin, who is black and Ghanaian, began working as an Export Second Shift Operations Supervisor at CNHi's Lebanon, Indiana facility on January 3, 2012. (*Id.* ¶ 4; Filing No. 36-1, Deposition of Abdullah Ennin 234:24-235:3). During the relevant time period, he was the only black supervisor at that facility. (Ennin Dep. 235:4-19). Ennin's shift started at 2:00 p.m. and ended at 10:30 p.m. (Darlin Dec. ¶ 5). Michael Lewis was the Export Operations Manager and Ennin's direct supervisor. (Filing No. 30-3, Declaration of Michael Lewis ¶¶ 2, 4). Lewis reported to Stephen Lincoln who was the Manager, Master Depot. (*Id.* ¶ 4).

### B. Ennin is Cited for Exercising Poor Judgment

In May 2014, Ennin received a written warning for misconduct. (*Id.* ¶¶ 7-8; Ex. A to Lewis Dec.). According to CNHi, Ennin got into a "verbal altercation" with a third shift supervisor "regarding the turning off of a radio." (Ex. A to Lewis Dec.). Ennin's "inappropriate behavior" was allegedly witnessed by three hourly employees, including two of his second shift employees. (*Id.*). The warning provides, in relevant part, "You

3

are in a leadership position and behavior like this is not acceptable. . . . [Y]ou must set an example for your employees." (*Id.*). Ennin and Lewis both signed the warning.[1]

**C. Ennin's Medical Condition and First Request for Leave**

Ennin suffers from painful hemorrhoids. He planned to undergo surgery for this condition on November 7, 2014. (Ennin Dep. 186:5-8). He had contacted Prudential, CNHi's third party leave administrator, and requested leave for the procedure. (*Id.*; Darlin Dec. ¶ 14). That request was approved. (Ennin Dep. 186:6-8). But after a consultation, he learned that his hemorrhoids might reappear even after surgery. (*Id.* 186:9-14). He therefore cancelled the operation in order to explore the possibility of alternative treatment. (*Id.* 187:20-25). He notified Prudential that he would not be taking leave as planned. (*Id.* 188:1-9).

**D. Ennin Has Car Trouble and Asks an Hourly Employee for Help**

On Monday, November 17, 2014, at 1:43 p.m., Lewis received a phone call from Ennin. (Lewis Dec. ¶ 9). Ennin told Lewis that his car had broken down on the way to work, and he would therefore be running late. (*Id.*). At the time, Ennin was approximately five minutes away from CNHi. (Ennin Dep. 138:2-6). At 2:53 p.m., Ennin advised Lewis that he was at work. (Lewis Dec. ¶ 10).

---

[1] Ennin takes issue with this account of the incident. He maintains that he did not yell at the other supervisor, and at least one of the associates who allegedly overheard the dispute "never mentioned anything to HR to that effect." (Ennin Dep. 125:23-128:25). Ennin's dispute is odd considering that he signed the warning. But regardless of the specific facts that gave rise to this discipline, it is undisputed that Ennin was issued a written warning in May 2014. That is the salient fact for purposes of this motion.

On Tuesday, November 18, Stacy Darlin, Human Resources Manager, received a report that, the day before, Ennin called Gonzalo Chavez, an hourly second shift employee, and asked him to leave work and bring Ennin some gas but to stay on the clock. (Darlin Dec. ¶ 7). Chavez was the "team lead" on second shift and reported directly to Ennin. (*Id.*). Darlin investigated this report. (*Id.* ¶ 8). She confirmed that Chavez had clocked in at 1:44 p.m. on November 17. (*Id.*). He then swiped out of the employee entrance[2] at 2:00 p.m. but did not clock out. (*Id.*). Chavez did not use his badge to get back into the building. (*Id.*). Instead, security camera video showed Ennin and Chavez entering the front salary employee entrance at 2:46 p.m. (*Id.*). Ennin swiped his badge through the security entrance and allowed Chavez to walk behind him, through the front door, without swiping his badge. (*Id.*).

Darlin also checked CNHi's timekeeping system, eTime, and found that it had not been corrected to show Chavez's time away from work. (*Id.* ¶ 9). It was Ennin's responsibility to make all appropriate adjustments to the eTime system at the end of every shift. (*Id.*). Based on this information, there were approximately 45 minutes where Chavez was paid for working when he was not even on the premises. (*Id.*).

**E. Ennin Meets with Supervisors**

On Wednesday, November 19, Lincoln, Lewis, and Darlin met with Ennin and gave him an opportunity to explain the situation. (*Id.* ¶ 10). He provided his version of the events and the reasoning behind his decisions. As to why he allowed an hourly

---

[2] This CNHi facility has two entrances, one for hourly employees and one for supervisors. Supervisors may also use the hourly employee entrance. (Ennin Dep. 84:10-85:14).

employee to enter the facility without swiping his own badge, Ennin asserted, "Everybody does it. I do it all the time." (Ennin Dep. 174:16-19). There are three possible scenarios for Chavez' temporary absence, and which option is true determines whether there is a timecard problem: (1) he had not yet arrived at work when Ennin called, meaning he was not clocked in, (2) he was at work, and he clocked out when he left to help Ennin, or (3) he was at work, and remained clocked in when he left to help Ennin. During the meeting, Ennin essentially claimed that while he did not know for sure which scenario had actually occurred, he thought it was the first based on calls he had made to other employees. (Darlin Dec. ¶ 10; Ennin Dep. 172:14-24, 178:1-8).

Even after walking through the series of events, Ennin did not take responsibility or even acknowledge the seriousness of his actions. (Darlin Dec. ¶ 11). Lewis explained to Ennin that telling an hourly employee to leave the building without anyone's knowledge or approval was not acceptable. (Lewis Dec. ¶ 13). His actions left the shift unattended by both the supervisor and the department lead. (*Id.*). Ennin was told that he placed the employee and CNHi at risk. (*Id.*). Lewis also advised Ennin that allowing an employee back into the building by "piggy backing" onto his badge swipe was a C-TPAT violation[3], and a violation of building security. (*Id.*).

On the same day, Chavez provided his account of the events to Human Resources. (Filing No. 30-4, Deposition of Gonzalo Chavez 50:2-6). He confirmed that he left the

---

[3] CNHi abides by certain U.S. Customs and Border Protection standards relating to access and security. (Darlin Dec. ¶ 17). These standards, called the Customs-Trade Partnership Against Terrorism ("C-TPAT"), include the requirement of keeping building entrances and exits secure with employee ID scans. (*Id.*).

facility to assist Ennin after he had clocked in. (*Id.* 15:1-16:24). He also verified that when they returned to CNHi, he did not scan his badge. (*Id.* 21:2-11). Ennin scanned his badge at the front office entrance and Chavez followed him in. (*Id.*). But according to Chavez, Ennin then asked him if he had already clocked in, and Chavez answered, "Yes." (*Id.* 22:22-23:2). Ennin did not say anything in response. (*Id.* 23:3-4).[4] Chavez ultimately received a written warning on December 2 for "not notify[ing] management or supervision that [he] w[as] leaving the floor" and "not follow[ing] CTPAT protocol." (Ex. B to Chavez Dep.). Chavez and Lewis both signed the warning. (*Id.*).

### F. CNHi Decides to Terminate Ennin

Later that same day (Wednesday, November 19), Lincoln, Lewis, and Darlin discussed the matter further. (Darlin Dec. ¶ 12). They determined that Ennin's actions violated multiple rules of conduct, security, and leadership. (*Id.*). They also discussed the written warning Ennin received in May. (*Id.*). They felt termination was appropriate. (*Id.*). The group decided to meet with Ennin the following day to notify him of his termination. (*Id.*).

### G. Ennin Requests Leave a Second Time

After the meeting was over, Ennin had to use the restroom excessively. (Ennin Dep. 181:11-13). He sent Lewis a text message stating that he was not feeling well and wanted to go home. (Lewis Dec. ¶ 15). Lewis allowed Ennin to go home early. (*Id.*). Because he was using the restroom so much, one of Ennin's hemorrhoids became

---

[4] Ennin admits that he asked Chavez if he was on the clock. But Ennin does not remember how Chavez responded. (Ennin Dep. 164:12-165:2).

7

irritated and very painful. (Ennin Dep. 185:25-186:5, 186:17-21). He informed his doctor that he wanted to move forward with the surgery, and scheduled it for Friday, November 21. (*Id.* 186:23-187:11). He subsequently called Prudential to request leave. (*Id.* 187:12-19, 188:22-25).

On Thursday, November 20 (the day after the meeting), Darlin was notified that Ennin had requested leave from November 19, 2014 to January 1, 2015. (Darlin Dec. ¶ 14; Ex. A to Darlin Dec.).

**H. Ennin's Hemorrhoidectomy**

Ennin's surgery was an outpatient procedure–i.e., he went home the same day that he had surgery. (Ennin Dep. 189:7-11). He was released from the hospital with restrictions. Specifically, Ennin (1) could not drive for two weeks, (2) had to "lie down a lot" for approximately one month, and (3) was instructed to eat a high fiber diet. (*Id.* 189:12-191:10, 266:21-267:8). Ennin testified that the surgery (1) made it difficult to have bowel movements for approximately one month, (2) prevented him from playing soccer for approximately one month, (3) prevented him from going to the gym for an unspecific period of time, and (4) prevented him from having sex for two to three months. (*Id.* 273:8-275:1).

**I. CNHi Informs Ennin of His Termination**

On December 1, Darlin learned that Prudential had approved Ennin for short term disability benefits from November 19 to December 14. (Darlin Dec. ¶ 14; Ex. B to Darlin Dec.). On that same day, she sent Ennin a letter informing him that his employment with CNHi was terminated. The letter reads,

On November 17th, you asked your hourly lead to leave work, while on the clock, for 45 minutes and assist you in getting gas in your personal vehicle. When you returned the employee followed you in the front entrance violating CTPAT compliance. You falsified the hourly employee's time by not properly having him clock in and out to assist you. You left your shift unattended for 45 min. without a lead or your direction or management notice. On November 19th, we reviewed the information above with you and you failed to take any responsibility for your actions. You have been previously warned about poor judgment. After completing our investigation of this matter, it was decided on November 19th that your employment would be terminated and you would be notified on November 20th.

On November 20th, you contacted Prudential regarding an unrelated personal health condition and requested leave from November 19th to December 14th, 2014. Please note that our termination decision stands. Your employment is terminated effective today. Please also note that we will <u>not</u> be requiring repayment of the disability benefits paid from November 20 through December 14.

(Filing No. 36-23, Termination Letter (emphasis original)).

### III. Legal Standard

"Summary judgment is proper where, construing facts and drawing inferences in the light most favorable to the non-moving party, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Novoselsky v. Brown*, 822 F.3d 342, 348-49 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

### IV. Discussion

**A. Racial and National Origin Discrimination**

Title VII makes it unlawful for an employer to discriminate against any individual because of his race or national origin. 42 U.S.C. § 2000e-2(a)(1). It is also unlawful for any individual—including an employer—to discriminate in the creation and enforcement of contracts. 42 U.S.C. § 1981. Ennin alleges that CNHi terminated him because he is

9

black and from Ghana. To avoid summary judgment on these claims, Ennin must produce evidence that would permit a reasonable jury to conclude his race and/or national origin caused the discharge. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). He has not done that here.

CNHi's termination letter identifies six different reasons for discharging Ennin: (1) he asked Chavez to leave work, while on the clock, in order to help him with his personal vehicle; (2) he falsified Chavez' time by letting him stay clocked in and then failing to manually adjust the time later; (3) he left his shift unattended by a lead or supervisor for 45 minutes without notifying management; (4) he violated C-TPAT protocol by allowing Chavez to enter the building without swiping his own badge; (5) he failed to take responsibility for his actions; and (6) he was previously warned for exercising poor judgment. At least on their face, these are all legitimate, non-discriminatory reasons. Ennin attempts to discredit most of them in his briefing. He asserts: (a) he did not know Chavez had already clocked in when he called for help; (b) the practice at his facility has been to make adjustments to time cards on Thursday of each week, but he left work early on Wednesday and then was out for several weeks; (c) Cassandra Hoskins was on the floor acting as "backup team lead" on the day in question, and management was on notice of the situation because he called Lewis; and (d) he has allowed hourly employees to follow him into the facility without swiping their badges on many occasions, and other supervisors do the same.

Unfortunately, the second and third responses are not supported with citations to evidence, as required by Local Rule 56-1(e). Ennin does not provide any citation at all

for the assertions that time cards are always changed on Thursday or that Hoskins was acting as the backup team lead on November 17. Additionally, while it is undisputed that Ennin called Lewis to notify him that his car had broken down, there is no evidence to suggest that Lewis knew Chavez, the team lead, would also be absent. Because these "facts" are not properly supported, they play no role in the court's analysis.

No reasonable jury could find CHNi liable for discrimination based on this narrative. Initially, Ennin does not point to any disparaging remarks or show that similarly situated employees were treated more favorably than him.[5] Rather, his theory for this claim wholly depends on a finding that CNHi's proffered reasons for terminating him are not legitimate. He points to a recent case in which the Seventh Circuit noted, "It has long been established that an employer's dishonesty in defending or explaining an employment decision can support an inference of illegal discrimination." *Lane v. Riverview Hosp.*, 835 F.3d 691, 697 (7th Cir. 2016) (affirming summary judgment for employer). Context matters though. The *Lane* court offered this principle of law in its discussion of an employee's argument that his employer made a deliberate misrepresentation to the Equal Employment Opportunity Commission ("EEOC") in its response to his charge of discrimination. *See id.* ("Lane argues that Kuzee lied to the

---

[5] Ennin attempts to identify similarly situated employees, but the individuals he has selected are not similarly situated for at least two reasons: (1) they are hourly employees, not supervisors; and (2) they have not been previously disciplined for exercising poor judgment. *See Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 661 (7th Cir. 2016) ("Although comparators do not have to be identical in every conceivable way, they cannot be 'similarly situated' unless they are directly comparable in all material aspects."); *id.* at 662 ("An employee who does not have a similar disciplinary history and performance record as the plaintiff is not similarly situated.").

EEOC about a material fact and that the lie supports an inference of illegal discrimination."). Here, Ennin does not contend that CNHi lied to the EEOC.

Putting the factual distinctions aside, Ennin's challenges to CNHi's explanation for the discharge do not satisfy the rule from *Lane*. He fails to show how any of the reasons are objectively false. For example, while Ennin may not have known Chavez was on the clock when he called for help, that does not change the fact that Chavez was, in fact, on the clock at that time. Likewise, Ennin claims employees routinely violate C-TPAT protocol without recourse, but that does not make the termination letter untrue. It is still accurate to state that he violated C-TPAT rules on the date in question. But even if something in the termination letter was demonstrably false, Ennin would need the jury to take two additional inferential steps in order to prevail on this claim. To paraphrase the *Lane* court, a jury would have to conclude first that the discrepancy was the result of a deliberate falsehood, and second that the motive of the deliberate falsehood was to conceal unlawful race or national origin discrimination. Without further circumstantial evidence of discrimination, a reasonable jury could not take those steps.[6]

At best, Ennin's critiques of the grounds for termination show that CNHi made a harsh choice. A reasonable jury presented with the facts of this case might sympathize with Ennin and conclude that he made a justifiable decision under the circumstances. It

---

[6] The *Lane* court noted, "The issue here is familiar as the pretext element of the *McDonnell Douglas* framework for circumstantial evidence. Even under that framework, such evidence of pretext is not enough by itself to prove discrimination; it becomes a factor only after the plaintiff has shown other circumstances corroborating unlawful intent, including evidence that a similarly situated employee outside the plaintiff's protected class was treated better. That additional evidence is missing here." *Id.* This language applies with equal force in the instant case.

was a cold day and Ennin was very close to work when his vehicle broke down, so it was at least arguably logical to call a fellow employee for help. The jury might feel that CNHi should have given Ennin another chance, but that does not mean it acted unlawfully. "Title VII does not forbid sloppy, mistaken, or unfair terminations; it forbids discriminatory or retaliatory terminations." *Collins v. Am. Red Cross*, 715 F.3d 994, 999 (7th Cir. 2013). *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006) ("Federal courts have authority to correct an adverse employment action only where the employer's decision is unlawful, and not merely when the adverse action is unwise or even unfair.").

In the end, no reasonable jury could find CNHi discharged Ennin because of his race or national origin. CNHi is therefore entitled to summary judgment on Ennin's Title VII and Section 1981 claims.

**B. Disability Discrimination**

The ADA prohibits employers from discriminating against disabled employees because of their disability. 42 U.S.C. § 12112(a). To establish discrimination on the basis of a disability, Ennin must show: (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of the position (with or without a reasonable accommodation); and (3) he suffered from an adverse employment action because of his disability. *Carothers v. Cnty. of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015). Assuming, *arguendo*, that Ennin can satisfy the first two elements, he cannot satisfy the third.

Like his claims for racial and national origin discrimination, there is simply insufficient evidence in the record to allow a reasonable jury to find that Ennin was terminated because of his alleged disability. But this claim also fails for an additional, independent reason. In his response brief, Ennin argues that he became temporarily disabled as a result of his hemorrhoidectomy. At no point does he suggest that he was disabled prior to that operation. Put differently, he does not contend that his hemorrhoids, in and of themselves, constitute an impairment that substantially limits one or more major life activities. *See* 42 U.S.C. § 12102(1)(A). Rather, he solely focuses on how the operation affected his life–e.g., he was required to lie down "a lot" and he had difficulty with bowel movements. This theory matches Ennin's deposition testimony. (*See* Ennin Dep. 234:13-16 ("Q: What disability do you have? A: I was – surgery. The surgery that I did. Q: For your hemorrhoids? A: Yes.")).

This framing of the claim renders it a non-starter. The undisputed evidence shows that CNHi made the decision to fire Ennin before he had his operation. Lincoln, Lewis, and Darlin agreed to terminate Ennin's employment on November 19; Ennin had his hemorrhoidectomy on November 21. He seems to believe that CNHi is lying about the date it decided to fire him. That is understandable, as the timeline is convenient for CNHi. But uncorroborated speculation is not enough to stave off summary judgment. *See Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) ("[S]peculation, hunches and intuition cannot defeat summary judgment."). Ennin's suspicion does not trump Darlin's sworn declaration, Lewis' sworn declaration, and the text of the termination letter. At

bottom, Ennin has produced no admissible evidence that would allow a reasonably jury to infer that this timeline is incorrect. Summary judgment for CNHi is required.

### C. Failure to Accommodate

The ADA requires employers to make reasonable accommodations for a qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A). In order to establish a claim for failure to accommodate under the ADA, Ennin must show that: (1) he is a qualified individual with a disability; (2) CNHi was aware of the disability; and (3) CNHi failed to reasonably accommodate his disability. *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015). This claim fails for the same reason that the disability discrimination claim fails: Ennin allegedly became disabled after CNHi had already decided to terminate him. Accordingly, CNHi simply could not have been aware of his disability when it made the decision to discharge. It is therefore entitled to summary judgment on this claim.

### D. Interference

Under the FMLA, eligible employees are entitled to twelve weeks of unpaid leave annually. 29 U.S.C. § 2612(a)(1). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any rights provided under the FMLA. 29 U.S.C. § 2615(a)(1). To prevail on this claim, Ennin must establish: (1) he was eligible for FMLA protection; (2) CNHi was covered by FMLA; (3) he was entitled to take leave under FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 223 (7th Cir. 2015). Assuming, *arguendo*, that Ennin

can satisfy the first four elements, he cannot satisfy the fifth because it is undisputed that CNHi provided him with FMLA leave. He was approved for leave twice, and there is no evidence that CNHi did anything to deny or otherwise interfere with his right to benefits. Ennin was discharged after his second request for leave had been approved and before any additional requests were submitted. CNHi is therefore entitled to summary judgment on this claim.

### E. Retaliation

"The FMLA also makes it unlawful for an employer to retaliate against an employee who exercises his FMLA rights." *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015). To survive summary judgment on this claim, Ennin must produce evidence showing that CNHi fired him because he took valid leave. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 819 (7th Cir. 2015). Like his claims for racial, national origin, and disability discrimination, there is simply insufficient evidence in the record to allow a reasonable jury to find Ennin was terminated because he took medical leave.

### F. Conspiracy to Deprive Civil Rights

Section 1985(3) prohibits a conspiracy to deprive a person of equal protection under the law. 42 U.S.C. § 1985(3). Section 1986 creates a cause of action against any person who, despite having knowledge of said conspiracy, neglects or refuses to stop it. 42 U.S.C. § 1986. Whereas the court finds no violation of Ennin's rights, he cannot prevail on either claim. *See Indianapolis Minority Contrs. Ass'n v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999) ("[T]he absence of any underlying violation of the plaintiffs' rights

16

precludes the possibility of their succeeding on this [Section 1985(3)] conspiracy count."); *Grimes v. Smith*, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985) ("[L]iability under § 1986 is derivative of § 1985(3) liability; without a violation of § 1985(3), there can be no violation of § 1986.").

### G. Negligent Supervision

"[U]nder negligent supervision, an employer may be liable if 'an employee steps beyond the recognized scope of his [or her] employment to commit a tortious injury upon a third party.'" *BGC Entm't, Inc. v. Buchanan*, 41 N.E.3d 692, 704 (Ind. Ct. App. 2015) (quoting *Scott v. Retz*, 916 N.E.2d 252, 257 (Ind. Ct. App. 2009)) (alteration in *Buchanan*). To withstand summary judgment, Ennin must show that a reasonable jury could find: (1) CNHi owed him a duty of care, (2) it breached that duty, and (3) he suffered an injury that was proximately caused by CNHi's breach. *Scott*, 916 N.E.2d at 257. CNHi allegedly failed to exercise reasonable care when it did not prevent its supervisors and administrative personnel from violating Ennin's federally-protected rights. Because the court has concluded CNHi did not violate Ennin's rights, CNHi is entitled to summary judgment on this count.

## V. Conclusion

Therefore, CNHi's Motion for Summary Judgment (Filing No. 28) is **GRANTED**.

**SO ORDERED** this 22nd day of May 2017.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.